UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREENWOOD POINT, LP, | ) | Case No. 10-00569-AJM-11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**DEBTOR'S FIRST DAY MOTION FOR AUTHORITY TO USE CASH COLLATERAL FOR OPERATING EXPENSES, AND GRANTING REPLACEMENT LIENS**

Greenwood Point, LP, as debtor and debtor-in-possession (the "Debtor"), by counsel, pursuant to 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 4001(b) and Southern District of Indiana Local Rule B-4001-2, requests that the Court enter an Order authorizing the use of Cash Collateral, as defined by 11 U.S.C. § 363(a), for operating expenses through a hearing on a final order, and the granting of replacement liens. In support of its motion, the Debtor states as follows:

**I. General Background**

1. On January 20, 2010, (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in this chapter 11 case. No official unsecured creditors' committee has yet been appointed in this chapter 11 case.

3. This is a "First Day Motion" as that term is defined in Southern District of Indiana Local Rule B-9013-3(f).

4.     The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5.     Proposed counsel for the Debtor has discussed the filing of this case with the chief courtroom deputy for the U.S. Bankruptcy Court for the Southern District of Indiana and a staff attorney for the United States Trustee, and have advised the Office of the United States Trustee of this First Day Motion in accordance with Southern District of Indiana Local Rule B-9013-3(b).

## II. Events Leading to the Filing

6.     The Debtor owns a 135,865 square foot retail center and outlots at 8010-8040 U.S. 31 South, Indianapolis, Indiana (the "Center").

7.     The Center is strategically located along the retail corridor bordering Greenwood Park Mall in Greenwood, Indiana. This prime location sees approximately 50,000 vehicles per day and is within five miles of approximately 175,000 people.

8.     The Center's excellent location and desirable retail spaces allowed it to thrive, attracting national anchor tenants such as Hobby Lobby, Michael's Arts & Crafts, Buffalo Wild Wings and Circuit City.

9.     Unfortunately, the Center could not escape the economic havoc wreaked by the 2008-2009 recession, as Circuit City, an anchor tenant leasing 28,222 square feet, rejected its lease with the Center during the course of its chapter 11 bankruptcy proceeding.

10.    This loss of a large anchor has caused the Debtor to experience cash flow issues, and despite the Debtor's best efforts to release the Circuit City space, it fell behind on its mortgage payments to its secured lender while that anchor space remained vacant. The lender, in turn, filed an action in state Court seeking the appointment of a receiver over the Center.

2

11. The Debtor filed this chapter 11 case in order to continue to serve its tenants, allow it sufficient time to find one or more replacement tenants for the former Circuit City space and thereby be able to either restructure its debts and pay creditors or explore new refinancing opportunities, and emerge from this proceeding to again assume its position as an integral part of the Greenwood Park Mall retail corridor.

### III. Relief Requested

12. As of the Petition Date, the Debtor is indebted to CWCapital Asset Management, LLC, solely in its capacity as Special Servicer for Bank of America, N.A., as successor by merger to LaSalle Bank National Association as Trustee for the Registered Holders of CB-UBS Commercial Mortgage Trust 2000 – C-4, Commercial Mortgage Pass-Through Certificates Series 2000 – C-4 ("CWCapital") in the approximate amount of $7,000,000.00. The Debtor has performed a preliminary investigation and analysis of the related UCC and mortgage filings and based upon this preliminary investigation believes that the aforementioned obligations may be secured by valid, enforceable and non-avoidable liens and security interests in substantially all of the property owned by the Debtor. However, in filing this motion, the Debtor does not concede that CWCapital holds valid, perfected or enforceable pre-petition security interests in and to any of said property nor does the Debtor concede to the priority of any of CWCapital's asserted liens. The Debtor retains the right to contest the validity, perfection, and enforceability of CWCapital's alleged pre-petition liens.

13. The Debtor has an immediate need to use Cash Collateral which is likely subject to the liens in favor of CWCapital, in order to permit, among other things, the orderly continuation of the operation of the Debtor's business. Use of Cash Collateral is necessary to prevent the immediate and irreparable harm to the Debtor and its property that would otherwise

result if the Debtor is prevented from obtaining use of Cash Collateral for the continued operation of its business.

14.  The Debtor has no present alternative borrowing source from which to secure sufficient additional funding to operate its business without utilizing its Cash Collateral.

15.  The Debtor is unable to operate its businesses without interim use of Cash Collateral.

16.  Without interim relief, the Debtor will not be able to operate its business for fourteen (14) or more days until a final hearing on this motion can be held.  Accordingly, the Court, as a preliminary matter, should enter an interim order authorizing the Debtor to use Cash Collateral consistent with the cash use budget attached to the motion.

17.  All of the Debtor's cash and cash equivalents (cash and accounts receivable) as of the Petition Date and all proceeds thereof securing the Debtor's obligations to CWCapital, among other things, constitute "cash collateral" (as that term is defined in § 363(a) of the Bankruptcy Code).  On the Petition Date, the Debtor had cash in hand or on deposit in the approximate amount of $67,621.82, and its receivables consist chiefly of a lease rejection and unpaid prepetition lease claim against Circuit City in the amount of $842,836.69, which, together with proceeds, is cash collateral within the meaning of § 363(c)(2) of the Bankruptcy Code (the "Cash Collateral" herein).

18.  This motion does not contain any provision specified in Southern District of Indiana Local Rule B-4001-2 ("Local Rule 4001") other than the waiver of any right to contest the attachment of CWCapital's lien to postpetition rents and proceeds pursuant to § 552(b) of the Bankruptcy Code.

19. Pursuant to Local Rule 4001-2(d), the Debtor anticipates that its average aggregate monthly operating expenses through the week ending February 26, 2010 will approximate $24,000. The Debtor's financial projections for the period for which they seek authority to use Cash Collateral are attached hereto as **Exhibit A** (the "Initial Cash Use Budget"), and show that the Debtor will only use Cash Collateral for the operation, maintenance, and upkeep of the Center and for expenses incurred in the ordinary course of business.

### IV. Basis for Relief Requested

20. In accordance with § 363(c)(2)(B) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001-2, the Debtor requests that the Court enter an Order authorizing its interim use of Cash Collateral for payment of its ordinary and necessary operating expenses through the date of a final hearing on this motion, as detailed on the Initial Cash Use Budget.

21. CWCapital may be entitled to adequate protection of its interests in the Debtor's Cash Collateral in order to be protected from any diminution in value of such Cash Collateral, including the diminution resulting from the use of Cash Collateral and the imposition of the automatic stay. Therefore, the Debtor agrees to, and requests authority to, provide the required adequate protection as follows:

    a. The Debtor agrees to maintain insurance on the Center;

    b. The Debtor will waive any challenge to the continuing attachment of CWCapital's asserted lien in rents and the proceeds thereof pursuant to 11 U.S.C. § 552(b);

    c. To protect CWCapital in the event that a determination is made that § 552(b) of the Bankruptcy Code does not apply in this case, the Debtor will grant CWCapital

      a post-petition replacement lien in all assets of the Debtor to the same extent as CWCapital's valid, properly perfected liens in the Debtor's pre-petition property, excluding bankruptcy causes of action, to the extent necessary to secure CWCapital for any diminution in the value of the Debtor's Cash Collateral securing CWCapital's pre-petition obligations that occurs during the period of cash use, subject to any prior existing valid lien superior to CWCapital on the date of filing; and

    d. The Debtor will use Cash Collateral only for the operation, maintenance and upkeep of the Center and for expenses incurred in the ordinary course of business in amounts consistent with its cash use projections attached hereto and those submitted to the Court and CWCapital from time to time hereafter.

22. In the event the Court does not authorize the use of the Cash Collateral, the Debtor believes it will not be able to maintain its current business operations.  Without use of Cash Collateral, the Debtor will be seriously and irreparably harmed, resulting in significant losses to the Debtor's estates and its creditor.

[*Rest of page left intentionally blank*]

WHEREFORE, the Debtor requests that this Court enter an Order (1) authorizing and allowing the Debtor to use Cash Collateral for its general ongoing business operations through the entry of a Final Order pursuant to § 363(c)(2)(B) of the Bankruptcy Code; and (2) granting the Debtor such other and further relief as the Court deems proper.

DATED: January 25, 2010  GREENWOOD POINT, LP,
as debtor and debtor-in-possession

By:  /s/ Paul T. Deignan
Paul T. Deignan, one of its proposed counsel

Paul T. Deignan
Jeffrey J. Graham
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204
Telephone:  (317) 713-3500
Facsimile:  (317) 713-3699
Email: pdeignan@taftlaw.com
jgraham@taftlaw.com

1177720